IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEROY LEWIS SMITH, | : |
| Petitioner, | : |
| v. | : Civ. Act. No. 11-288-LPS |
| DWIGHT HOLDEN, Chairman, Board of Parole, DAVID PIERCE, Warden, and JOSEPH R. BIDEN, III, Attorney General of the State of Delaware, | : |
| Respondents.[1] | : |

Leroy Lewis Smith. Pro se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

August 13, 2014
Wilmington, Delaware

---

[1]Warden David Pierce has replaced former Warden Perry Phelps, an original party to this proceeding. *See* Fed. R. Civ. P. 25(d).

*[signature]*

**STARK, District Judge:**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Leroy Lewis Smith ("Petitioner"). (D.I. 1) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

### A. 1969 Crime

In 1969, Petitioner was convicted of assault with intent to commit rape. (D.I. 12, Del. Dep't. Justice Response to Parole Application dated June 4, 2009, at 1) Although he was sentenced to four years of incarceration, Petitioner was released less than two years into his sentence, on May 24, 1971. He never reported to his probation officer and disappeared. *Id*.

### B. 1971 Crime

On July 17, 1971, nineteen year-old B.J. was alone in her apartment. (D.I. 11 at 4) Petitioner, who was unknown to her, forced his way into the apartment and raped her. B.J. delayed reporting the offense for two days because Petitioner threatened to kill her if she reported it to the police. Petitioner later said of the crime: "My sister lived next door to this girl. I forced my way into her apartment. I was drinking and I don't remember too much. I don't remember what I did." (D.I. 11 at 4) When Petitioner committed this rape, he was still on parole for his 1969 conviction for assault with intent to commit rape. (*Id*. at 5)

In 1972, Petitioner was convicted of raping B.J. and sentenced to life imprisonment. The Delaware Supreme Court reversed that decision in 1974. *See Smith v. State*, 317 A.2d 20 (Del. 1974). Thereafter, Petitioner entered a plea to the lesser offense of assault with intent to commit rape. He was sentenced to ten years. (D.I. 12, Del. Dep't Justice Response to Parole Application dated June 4, 2009, at 1) Midway through his sentence, Petitioner was conditionally released. *Id*.

Five months after his conditional release was granted, Petitioner committed the 1980 crimes described below.

### C. 1980 Crimes

During the late afternoon on Wednesday, March 19, 1980, sixteen year-old S.M. was walking in the area of Third and Union Streets in Wilmington. Petitioner approached her and introduced himself with a phony name. He asked S.M. if she wanted to smoke some marijuana but she refused his offer and kept walking until she entered a nearby school. A short while later, when she was leaving the school, Petitioner grabbed S.M. She struggled to free herself. Petitioner began choking her, told her he had a gun, and that he would kill her if she did not do as he asked. Petitioner forced S.M. to some neighboring garages and told her to pull down her pants so that he could look at her naked body. At this point, a male friend of S.M. happened upon the two and eventually scared Petitioner away. The friend went to a nearby church to get help. The police were called and the crime was reported.

During this same time-frame, in March 1980, twenty-three year-old R.L. was a female taxicab driver working for the Diamond Cab Company. At approximately 9:30 p.m. on Friday, March 21, 1980, she had just dropped off a rider at Lancaster Avenue and Ford Avenue when Petitioner approached her. Petitioner told R.L. that he had to get to work and wanted her to take him there. R.L. told Petitioner that she was scheduled to pick up another fare but he insisted that he wanted her to drive him to his destination. As Petitioner spoke to R.L., she realized from the odor on his breath that he had been drinking. R.L. tried to use his drinking as an excuse for rejecting his fare, but Petitioner and a friend cajoled her into driving Petitioner. Petitioner entered the cab and gave R.L. an address as his friend walked away.

When they reached the location, Petitioner did not get out. He placed a hard object in R.L.'s right side, told her to continue to drive, and directed her to the foot of East Seventh Street in Wilmington. Once at that location, Petitioner forced R.L. to have sexual intercourse with him. Petitioner then told R.L. to drive to Eighth and Walnut Streets, where he got out of the cab. Before leaving, however, Petitioner threatened to kill R.L. if she told anyone what he had done to her. R.L. drove back to the cab company, reported the rape, gave the police Petitioner's description, and later identified him in a photographic line-up. Petitioner was apprehended shortly after the crime while he was walking in Wilmington's East Side. Petitioner was still on parole from the 1974 sentencing when he committed these two offenses. (D.I. 11 at 4-5)

### D. Procedural Background

On March 22, 1980, Petitioner was arrested for, and subsequently indicted on, *inter alia*, charges of first degree rape and first degree kidnapping as a result of his actions on March 19 and March 21. *Id.* at 1. Petitioner pled guilty to first degree rape and second degree kidnapping. On September 26, 1981, the Superior Court sentenced him to life in prison with eligibility for probation or parole, plus an additional thirty years imprisonment and the remainder of his previously paroled sentence. Petitioner filed an application to withdraw his guilty plea, which the Superior Court denied. (*Id.*) The Delaware Supreme Court affirmed that decision. *See Smith v. State*, 451 A.2d 837 (Del. 1982).

In July 1998, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied as time-barred under Rule 61(i)(1). *See State v. Smith*, 1999 WL 743943 (Del. Super. Ct. Aug. 12, 1999).

3

Petitioner filed applications for parole in 1996, 2000, 2004, and 2009. The Board of Parole denied all four of his applications. (D.I. 11)

## II. GOVERNING LEGAL PRINCIPLES

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)     (i) there is an absence of available State corrective process; or
>
>         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

4

## III. DISCUSSION

On June 23, 2009, the Board of Parole denied Petitioner's fourth request for parole by a vote of five to zero, stating that Petitioner "continues to pose a risk to the community." (D.I. 12, Board of Parole's decision letter dated June 23, 2009) The Board based its decision on the following factors: (1) the violent nature of Petitioner's offense; (2) Petitioner's significant criminal history; and (3) Petitioner's prior failure parole/probation. (*Id.*) The Board also recommended that Petitioner "work with [his] counselor to develop a plan for continued substance abuse and domestic violence treatment, and mental health and violent offender counseling." *Id.*

In this proceeding, Petitioner contends that the Board violated his rights to due process and equal protection when it denied his 2009 parole application. (D.I. 1 at 5) He asserts that the Board's decision was "arbitrary and capricious" because the factors articulated by the Board are "not reasonably or rationally related to effective treatment," and the Board should not consider those factors because they are "unchanging." (*Id.*) Rather, the Board should grant his parole request because he has: (1) successfully participated in and completed the recommended treatment programs; (2) maintained a clean conduct record; (3) received a favorable recommendation for parole from the Department of Correction;[2] and (4) received no negative recommendation from the Attorney General. The Court construes Petitioner's claim to be that the Board of Parole's 2009 denial of his parole request violated his right to substantive due process.

---

[2]Contrary to Petitioner's assertion, the Department of Justice actually did oppose his parole request. (D.I. 12, Del. Dep't Justice Response to Parole Application dated June 4, 2009, at 1)

5

As an initial matter, the Court concurs with the State's assertion that the exhaustion requirement is excused in this case, because Delaware does not have a procedure by which a prisoner can challenge a decision made by the Board of Parole. (D.I. 11 at 5-6) Therefore, the doctrine of exhaustion/procedural default does not preclude the Court from reviewing the merits of Petitioner's claim.

"There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 131 S.Ct. 859, 862 (2011). Similarly, the Delaware parole statute does not create a liberty interest in being released on parole. *See Eskridge v. Casson*, 471 F. Supp. 98, 101 (D. Del. 1979). However, according to Third Circuit precedent, once a state institutes a parole system, "all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).[3] In order to prevail on a substantive due process claim with respect to a parole board's decision, a petitioner must establish that the challenged action shocks the conscience. *See Evans v. Secretary, Pa. Dep't of Corrs.*, 645 F.3d 650, 659 (3d Cir. 2011). The "official conduct most likely to rise to the conscience-shocking level is the conduct intended to injure in some way unjustifiable by any government test." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003). For instance, a Board of Parole may not arbitrarily deny parole on the basis of impermissible criteria such as race, religion, or the exercise of free speech rights, or on criteria with no rational relationship to the purpose of parole. *See Block*, 631 F.2d at 236-37.

---

[3]Although "the vitality of *Block* is questionable, it must be followed until overturned." *Walls v. Att'y Gen. of Pa.*, 2007 WL 4190790, at *3 n.4 (W.D. Pa. Nov. 26, 2007) (questioning *Block*'s holding that substantive due process can be violated despite the absence of a liberty interest).

Nevertheless, the Third Circuit has stressed that "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

Here, the Court concludes that Petitioner's argument fails to demonstrate a violation of his right to substantive due process. Petitioner has not shown that any of the factors considered by the Board shock the conscience, or that such factors constitute behavior intended to injure Petitioner in a way that is not justified by any legitimate government interest. *See McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (stating it is "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole"); *Prever v. Barone*, 428 F. App'x 218, 220 (3d Cir. 2011) (DOC's negative recommendation is legitimate penological concern); *Gordon v. Wenerowicz*, 2011 WL 5509538, at *4 (M.D.Pa. Nov. 10, 2011) (denial of parole because petitioner poses risk to community is not "conscience shocking."). Notably, he does not allege that the Board relied upon any impermissible criterion such as race or religion in denying his parole application. In turn, nothing in the Board of Parole's written 2009 decision indicates that the Board weighed Petitioner's parole suitability factors in an arbitrary manner.

Accordingly, the Court will deny Petitioner's substantive due process claim as meritless.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's

7

assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.